UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In re:

EAGLE MECHANICAL INC.                    Case No. 23-00291-JMC-11

Debtor.

### EAGLE MECHANICAL INC.'S
### CHAPTER 11 DISCLOSURE STATEMENT

This Chapter 11 Disclosure Statement (the "**Disclosure Statement**") is being filed in this voluntary bankruptcy case filed by Eagle Mechanical Inc. ("**Debtor**"). Debtor's case was filed under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Indiana (the "**Bankruptcy Court**") on January 27, 2023 (the "**Petition Date**"). Debtor has been retained as Debtor-in-Possession under the provisions of § 1101 of the Bankruptcy Code.

### PURPOSE OF THIS DOCUMENT

Debtor has filed *Eagle Mechanical Inc.'s Chapter 11 Plan of Liquidation* (the "**Plan**"). A copy of the Plan is attached to this Disclosure Statement as **Exhibit 1**.

**Your rights may be affected. You should read this Disclosure Statement and the Plan carefully. You may wish to consult an attorney about your rights and your treatment under the Plan.**

In accordance with § 1125 of the Bankruptcy Code and Rule 3017(d) of the Federal Rules of Bankruptcy Procedure, Debtor transmits this Disclosure Statement to all of its creditors, shareholders, and other parties in interest in order to disclose information deemed by Debtor to be material, important, and necessary for such parties to arrive at

a reasonably informed decision in exercising their rights to vote for or against the Plan. This Disclosure Statement must be approved, after notice and a hearing, by the Bankruptcy Court as containing adequate information.

This Disclosure Statement describes:

    a. Debtor and significant events during the Bankruptcy Case;

    b. How the Plan proposes to treat Claims[1] or equity interest of the type you hold (i.e. what you will receive on your Claims or equity interest if the Plan is confirmed);

    c. Who can vote on or object to the Plan;

    d. What factors the Bankruptcy Court will consider when deciding to confirm the Plan;

    e. Why Debtor believes the Plan is feasible and how treatment of your Claim under the Plan compares to what you would receive on your Claim in a Chapter 7 liquidation; and

    f. The effect of confirmation of the Plan.

Debtor urges you to carefully read the contents of both this Disclosure Statement and the Plan before deciding to accept or reject the Plan. The Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

Finally, information contained in this Disclosure Statement has been obtained from Debtor's records, unless specifically stated to be from other sources. Debtor has attempted to furnish accurate information but is unable to represent or warrant that all of the information contained herein is totally free of any inaccuracies. Nevertheless, Debtor

---

[1] All capitalized terms used but not otherwise defined herein shall have the meaning assigned to them in the Plan.

believes that the contents of this Disclosure Statement are accurate and complete. No representations other than those set forth herein concerning Debtor or its property are authorized by Debtor or the Bankruptcy Court.

<u>**DEADLINE FOR VOTING AND OBJECTING;**</u>
<u>**DATE OF PLAN CONFIRMATION HEARING**</u>

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement. A separate order will be entered setting:

    a.  The time and place of the hearings to approve this Disclosure Statement and to confirm the Plan;

    b.  The deadline for voting to accept or reject the Plan; and

    c.  The deadlines for objection to the adequacy of the Disclosure Statement and confirmation of the Plan.

It is not necessary for creditors or shareholders to appear before the Bankruptcy Court to vote on the Plan. Only the desires of those creditors who actually vote on the Plan will be taken into consideration by the Bankruptcy Court in determining whether or not the Plan will be approved and therefore confirmed by the Bankruptcy Court. The terms of the Plan will be binding upon <u>**all**</u> creditors, whether or not they have cast a ballot.

If you want additional information about the Plan or the voting procedure, you should contact counsel for Debtor using the contact information located at the end of the Disclosure Statement.

<u>**DISCLAIMER**</u>

**The Bankruptcy Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Bankruptcy Court has**

**approved this Disclosure Statement does not constitute an endorsement of the Plan by the Bankruptcy Court or a recommendation that it be accepted.**

### HISTORY OF DEBTOR

Debtor was organized as an Indiana corporation on February 17, 1995, and is a certified HVAC and Plumbing contracting firm, providing mechanical systems for commercial, industrial, medical, and institutional facilities.

Upon the transfer of ownership to Debtor's current owner a few years ago, a new Manager was put in place to manage the day-to-day operations of Debtor. Since that time, Debtor suffered from the poor management of said Manager, which included undervalued estimates being quoted for certain projects. That Manager was replaced, and Debtor worked to try and rectify the problems that had been created, but the hole that Debtor found itself in was just too deep. At least four (4) large projects were significantly negatively impacted by the poor management and undervalued estimates, which caused mounting cash flow issues. In addition, certain accounts receivable stopped making timely payments to Debtor, exacerbating the cash flow issues.

There is one (1) project in particular Debtor was involved in with Armcorp Construction, Inc., as the general contractor ("**Armcorp**"), that, combined with the other factors, made Debtor's filing of bankruptcy necessary. Said project with Armcorp suffered years-long delays that were not the fault of Debtor. Due to the rapidly rising cost of materials that occurred during that delay, once the project with Armcorp was ultimately set to resume, Debtor could not complete its portion of the project for the amount it had originally quoted. Armcorp resisted Debtor's requests for change orders to account for the increased costs of Debtor's work and, on December 20, 2022, Armcorp filed a lawsuit

4

against Debtor, among others, in the United States District Court for the Southern District of Indiana, as Case No. 1:22-cv-02436-JMS-MJD. Debtor filed this bankruptcy case on January 27, 2023.

Within days of filing this Chapter 11 bankruptcy case, it became apparent to Debtor that liquidation was the best path forward. Debtor removed its employees from all active projects and subsequently all employees were let go.

## FINANCIAL INFORMATION

Liquidation Analysis. Under the Plan, Debtor proposes an orderly liquidation of all its assets for the benefit of creditors. Substantially all Debtor's property is encumbered by a first priority lien held by FMB. The Plan proposes that all Debtor's property encumbered by FMB's lien, other than accounts receivable, shall be surrendered to FMB who shall then be authorized to pursue remedies against all Debtor's property without further order of the Court.[2]

Debtor will continue to pursue the recovery of outstanding accounts receivable for the benefit of FMB. Debtor will also continue to pursue all Causes of Action and use the proceeds of any recovery from the Causes of Action to pay all the Administrative Expenses as well as make a pro rata distribution on all Allowed Unsecured Claims, which includes any Deficiency Claim asserted by FMB.

## THE PLAN OF REORGANIZATION

As required by the Bankruptcy Code, the Plan places Claims in various classes and describes the treatment each class will receive. The Plan also states whether each

---

[2] Other than accounts receiveable, Debtor does not believe there is any property left to liquidate.  Debtor has filed various Motions to Sell in this matter which were the mechanism by which Debtor liquidated much of its property.  Debtor also, returned some inventory to Plumbers Supply Company ("**Plumbers**") which ultimately reduced Plumbers request for an administrative expense in this matter.

class of Claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

The Plan divides Claims against Debtor into five (5) classes. A description of each class and its treatment is as follows:

Class 1: Administrative Expenses. Class 1 currently consists of Professionals, whose retention was previously approved by the Court, and the United States Trustee's Office with respect to quarterly fees that have accrued and remain unpaid at the time of confirmation and/or have yet to accrue.

Unless otherwise stated in the Plan, Administrative Expenses shall be paid in full within thirty (30) days of being incurred or Court approval, whichever is later.

Payment to Professionals for compensation and reimbursement of expenses will be made in accordance with the procedures provided for in the Bankruptcy Code and in any order of the Court relating to the payment of interim and final compensation and expenses. The Court will review and determine all requests from Professionals for compensation and reimbursement of expenses.

**All other entities seeking payment of an Administrative Expense shall file their request for allowance and/or payment no later than thirty (30) days after the filing of the Plan. Only those parties who timely file a request for an Administrative Expense shall be eligible to be paid under this Plan. Any request for an Administrative Expense not timely filed, unless otherwise authorized by the Court, shall be immediately disallowed and expunged.** Upon the timely filing of a request for an Administrative Expense, Debtor shall review the request and the supporting documents. If Debtor disagrees with the sought Administrative Expense, then Debtor shall

file an appropriate objection. If no objection is filed, then the Administrative Expense shall be allowed and treated as an Administrative Expense under the Plan. Such allowed Administrative Expenses shall not accrue interest and shall be paid within thirty (30) days of the Date of Confirmation or allowance of the Administrative Expense, whichever is later.

Class 2: Claims of Governmental Units. Class 2 consists of the Priority Claims of governmental units. Included within Class 2 are the Priority Claims of the IRS and the Ohio Department of Taxation.

The IRS asserts a pre-petition priority Claim of $292,644.89. Debtor has not paid this Claim post-petition. Upon a determination of the validity and amount, if any, of the IRS Claim, the Priority Claim shall be paid to the extent funds are available and pro rata with other priority claims (specifically that of the Ohio Department of Taxation).

The Ohio Department of Taxation asserts a pre-petition priority Claim of $3,087.24. Debtor has not paid this Claim post-petition. Upon a determination of the validity and amount, if any, of the Ohio Department of Taxation's Claim, the Priority Claim shall be paid to the extent funds are available and pro rata with other priority claims (specifically that of the IRS).

To the extent Debtor, after paying all Class 1 Claimants in full, does not have enough funds remaining to pay all Class 2 Claimants in full, Debtor shall then distribute such remaining funds pro rata amongst the Class 2 Claimants.

Class 3: Secured Claim of FMB. Class 3 shall consist of FMB's Allowed Secured Claim.

FMB's Allowed Secured Claim was approximately $2,004,305.56 as of the Petition Date. FMB has a properly perfected blanket lien against substantially all of Debtor's assets and has been granted replacement liens against the cash collateral through interim cash use orders.

All of FMB's collateral, except for Debtor's accounts receivable, has already been liquidated or shall be deemed abandoned from the Estate and FMB shall be entitled to proceed against all abandoned collateral.

Debtor shall continue to pursue the recovery of its outstanding accounts receivable that are FMB's collateral. Proceeds of the recovery of the outstanding accounts receivable shall be paid to FMB.

To the extent FMB is not paid in full from the proceeds of its collateral, it shall have a Deficiency Claim for the balance of its Allowed Secured Claim, and such Deficiency Claim shall be paid as a part of Class 4.

Class 4: Unsecured Non-Priority Claims. Class 4 shall consist of the Allowed Unsecured Claims and Deficiency Claims, if any.

To the extent Debtor, after paying all Class 1 and Class 2 Claimants in full, does not have enough funds remaining to pay all Class 4 Claimants in full, Debtor shall then distribute such remaining funds pro rata amongst the Class 4 Claimants. The following Claims have been filed as unsecured Claims and will be paid as Allowed Unsecured Claims to the extent such Claim is not a Disputed Claim:

| Creditor | Claim Amount Alleged |
|---|---|
| Airgas USA, LLC | $2,376.58 |
| American Producers Supply Co. Inc. | $2,526.08 |
| Armcorp Construction, Inc. | $100,000.00 |
| Bright Sheet Metal Company, Inc. | Unknown |
| Capital One N.A. | $433,890.56 |

| | |
|---|---|
| Carrier Corporation | $141,394.00 |
| Carroll Electric, Inc. | $837,614.12 |
| Centerville Winsupply | $73,074.19 |
| Central Rent-A-Crane, Inc. | $14,012.17 |
| Chemaqua | $1,676.89 |
| Faco, LLC | $6,317.94 |
| Fastenal Company | $306.01 |
| Ferguson Receivables, LLC | $14,528.74 |
| Granger Construction Co. | Unliquidated |
| Integrity General Contractors LLC | $1,525,018.93 |
| Internal Revenue Service (IRS) | $136,876.97 |
| Johnson Controls, Inc. | $209,989.65 |
| KH Excavating, LLC | $19,722.50 |
| Kleis Construction Inc. | $13,662.00 |
| Linde Welding Gas & Equipment Center | $8,785.83 |
| McMaster-Carr Supply Company | $1,864.57 |
| Messer Construction Co. | $1,284,346.46 |
| Ohio Department of Taxation | $1,754.02 |
| Paul Mueller Co. | $81,771.54 |
| Plumbers & Steamfitters Local Union No. 440 & related entities | $55,394.82 |
| Plumbers Supply Co. | $1,192,461.73 |
| Plumbers, Pipe Fitters & MES, Local Union No. 392 & related entities | $1,995.44 |
| Plumbers, Pipe Fitters & MES, Local Union No. 392 Pension Fund | $108,810.00 |
| RoofScreen MFG, Inc. | $14,427.12 |
| Ruscilli Construction Company LLC | $5,277.00 |
| Shiel Sexton Company, Inc. | $781,316.65 |
| Shuman Rigging and Transport LLC | $4,875.00 |
| Talisman Surety & Fidelity Co. Inc. | $23,710.00 |
| Trane US Inc. | $326,167.61 |
| United Rentals, Inc. | $27,381.86 |
| United States Fire Insurance Company | $301,830.16 |
| Veterans Contracting, Inc. | $670,372.00 |
| Weddle Bros. Building Group LLC | Unknown |
| Williams Scotsman Inc. | $12,875.91 |

Class 5: Shareholders. Debtor shall receive any funds remaining after payment in full of all classes above. Until such senior classes are paid in full, Debtor shall not take any distributions. Debtor's owners shall retain their interest in Debtor to the extent

necessary to wind down the business, file final tax returns, and help complete other administrative needs of Debtor. No distributions under the Plan are expected to be made to any holders of Class 5 Claims.

### Impairment and Voting

Class 1: Administrative Expenses. Class 1 is unimpaired and not entitled to vote to accept or reject the Plan.

Class 2: Claims of Governmental Units. Class 2 is impaired by the Plan. The Class 2 Claimants are entitled to vote to accept or reject the Plan.

Class 3: Secured Claim of FMB. Class 3 is impaired by the Plan. The Class 3 Claimant is entitled to vote to accept or reject the Plan.

Class 4: Unsecured Non-Priority Claims. Class 4 is impaired by the Plan. The Class 4 Claimants are entitled to vote to accept or reject the Plan.

Class 5: Shareholders. Class 5 is unimpaired by the Plan and not entitled to vote to accept or reject the Plan.

### CLAIMS OBJECTIONS

Expect to the extent that a Claim is already allowed pursuant to a final order, Debtor reserves the right to object to Claims. Therefore, even if your Claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your Claim is later upheld.

### MEANS OF IMPLEMENTING THE PLAN

On the Confirmation Date, all FMB's collateral, other than accounts receivable, shall be abandoned from the Estate. Some of FMB's collateral has already been liquidated. FMB shall be explicitly authorized to enforce its secured interests against its collateral without the need for further authorization from the Court.

Debtor shall continue to pursue the recovery of all outstanding accounts receivable for the benefit of FMB. Debtor shall pursue all Causes of Action for the benefit of creditors.

All Causes of Action under any theory of law or equity, including, without limitation, in an adversary proceeding filed in this case, shall be under the control of Debtor, who shall then have the right to commence, prosecute, abandon, settle, assign, or compromise, as appropriate, all such Causes of Action. The proceeds of the recovery of the Causes of Action shall be distributed as set forth in this Plan.

Debtor shall make the Final Distribution when, in its reasonable judgment, all remaining property of Debtor has been liquidated and there are no other sources of additional Cash for distributions, there remain no disputed Claims, and Debtor is in a position to make the Final Distribution in accordance with the terms of this Plan. Debtor shall provide no less than thirty (30) days' notice of the Final Distribution Date to all holders of Allowed Claims that remain unsatisfied as of the date such notice is sent.

## TREATMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

All executory contracts and unexpired leases that have not previously been assumed, will be rejected under the Plan, pursuant to Article V of the Plan. Consult your attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

All Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Court within thirty (30) days of the Confirmation Date or such Claims will be forever barred. If any order providing for the rejection of an executory contract or unexpired lease did not provide a deadline for the filing of Claims arising from such rejection, Claims with respect thereto must be filed within thirty (30) days of the Confirmation Date.

## TAX CONSEQUENCES OF THE PLAN

**Creditors concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

## REQUIREMENTS FOR PLAN CONFIRMATION

In order for the Plan to be confirmed, it must meet the requirements listed in § 1129 of the Bankruptcy Code, which requirements include but are not limited to the following:

a. The Plan must be proposed in good faith;

b. If a class of Claims is impaired under the Plan, at least one impaired class of Claims must accept the Plan, without counting votes of insiders;

c. The Plan must distribute to each creditor at least as much as the creditor would receive in a Chapter 7 liquidation case, unless the creditor votes to accept the Plan; and

d. The Plan must be feasible.

These requirements are **not** the only requirements listed in § 1129 of the Bankruptcy Code, and they are not the only requirements for confirmation of the Plan. However, Debtor believes it meets all requirements in § 1129 of the Bankruptcy Code such that the Plan should be confirmed.

## VOTES NEEDED TO CONFIRM A PLAN

If impaired classes exist, the Bankruptcy Court cannot confirm a Plan unless:

a. All impaired classes have voted to accept the Plan; or

b. At least one impaired class of creditors has accepted the Plan, without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes.

12

**A.**     <u>Votes necessary for a class to accept the Plan.</u>

A class of Claims accepts the Plan if both of the following occur:

a. The holders of more than 1/2 of the Allowed Claims in the class, who vote, cast their votes to accept the Plan; and

b. The holders of at least 2/3 in dollar amount of the Allowed Claims in the class, who vote, cast their votes to accept the Plan.

**B.**     <u>Treatment of non-accepting class of secured Claims, general unsecured Claims, and interests.</u>

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan upon the request of Debtor if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Bankruptcy Code. A plan that binds non-accepting classes is commonly referred to as a cram down plan. The Bankruptcy Code allows the Plan to bind non-accepting classes of Claims if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

Debtor will request the Bankruptcy Court confirm the Plan if it is not accepted by all classes of creditors.

**You should consult your own attorney if a cram down confirmation will affect your Claim, as the variations on this general rule are numerous and complex.**

<u>**FAILURE OF CONFIRMATION**</u>

If Debtor's Plan is not confirmed by the Bankruptcy Court, Debtor will either dismiss this case and liquidate outside of bankruptcy or convert the case to a straight liquidation bankruptcy under Chapter 7 of the Bankruptcy Code. Under straight liquidation, the

property of Debtor would be normally sold by a Trustee appointed by the Bankruptcy Court. The proceeds would first be used to pay the administrative expenses, which are entitled to priority under the Bankruptcy Code. To the extent property is subject to Claims of secured creditors, property would first be used to satisfy the secured Claims of those secured creditors.  In addition, any Claims entitled to priority, such as Claims for taxes, would be paid prior to any distribution to unsecured creditors.

Debtor believes that if Debtor was forced to liquidate under Chapter 7, the unsecured creditors would receive less than they would receive in this Plan, due to increased administrative expense costs in a Chapter 7, including the hypothetical Chapter 7 Trustee's statutory compensation. Therefore, Debtor believes the proposed Plan is in the best interest of all creditors and should be approved.

## SUMMARY

Debtor believes that the Plan affords all creditors, including the Unsecured Creditors, the best opportunity to share in the estate and maximize the return for their Claims. Debtor urges you to vote to accept the Plan.

Date: December 11, 2023

Respectfully submitted,

_____
Eagle Mechanical Inc.
By: Rogelio Mancillas, President


/s/ Weston E. Overturf
Weston E. Overturf, Attorney No. 27281-49
Anthony T. Carreri, Attorney No. 36107-49
KROGER GARDIS & REGAS, LLP
111 Monument Circle, Suite 900

Indianapolis, Indiana 46204
(317) 777-7443
WOverturf@kgrlaw.com

*Attorneys for Eagle Mechanical Inc.*